

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 11, 1972

Rep. Charles H. Jungmichel
Chairman, House Committee on
   Public Education
Texas House of Representatives
State Capitol Building
Austin, Texas 78711

Opinion No. M-1235

Re: Constitutionality of statute
authorizing voters of an in-
dependent school district
within a junior college
district to vote themselves
out of the junior college
district, and related
questions involving S.B. 19
and H.B. 33, 62nd Leg., 1972,
4th C.S.

Dear Mr. Jungmichel:

Your request for an opinion reads as follows:

"Senate Bill 19 and House Bill 33 are before
the Legislature at this time and they are being
considered by the House Committee on Public Edu-
cation of which I am Chairman. A question con-
cerning the legality of this proposed legislation
has arisen which I feel needs some clarification.

"In their application, these bills will
apply only to the Odessa Junior College District.
A part of that district comprising the Midland
Independent School District wants a legal basis
to disannex itself from the Odessa Junior College
District and establish a new Junior College Dis-
trict. This proposed disannexation and creation
of the separate Junior College District will be
voted on by the qualified voters of the indepen-
dent school districts. Those voting on the dis-
annexation question are a numerical minority in
the Junior College District. The vote, if
taken under this bill, would make it possible
for the numerical minority to decide the question
for all the voters in the Odessa Junior College
District.

"The questions to be answered are:

-6046-

"1.   Is it constitutional for the voters of an independent school district within a junior college district to vote themselves out of the junior college district?

"2.   Does the bill cover only the Odessa Junior College Taxing District?

"3.   If parts of the bill apply to other than the Odessa Junior College Taxing District, specifically what applies to other districts?

"4.   What effect would this bill have on subsequent junior college annexation and disannexation procedures?

"5.   Is this a precedent in junior college annexation and disannexation procedures in so far as geographic integrity, i.e. could any governmental entity vote itself out of a district at an election called by a petition signed by 5% of the voters without a vote of the whole district?"

S.B. 19 and H.B. 33, 62nd Leg. 4th C.S., are companion bills amending Subchapter d, Chapter 51, Texas Education Code, by adding 51.069 reading as follows:

"Section 51.069.   DISANNEXATION OF TERRITORY COMPRISING AN INDEPENDENT SCHOOL DISTRICT.

"(a) The territory of an independent school district which is the only school district that has been annexed to a countywide independent school district junior college district in an adjoining county may be disannexed from such countywide independent school district junior college district and constituted as a separate independent school district junior college district in accordance with the provisions of this section, provided that the countywide independent school district junior college district has no outstanding bonded indebtedness which was incurred after the annexation of such independent school district.

"(b) The proposed disannexation and creation of a separate junior college district shall be initiated by a petition signed by not less than five percent of the qualified taxpaying electors of the independent school district seeking disannexation.  The petition shall be presented to the board of trustees of the independent school district seeking to be disannexed, which shall pass upon the legality and genuineness of the petition and forward the petition, if approved, to the coordinating board.

"(c) If the petition is found to be in order and all statutory provisions have been complied with, the coordinating board shall approve the petition and notify the board of trustees of the independent school district seeking to be disannexed, of such approval. The board of trustees of the independent school district seeking disannexation shall then order an election to be held in the school district within a time not less than 20 days nor more than 30 days after the order is issued.  At the election the ballots shall be printed to provide for voting for or against the proposition:  'Disannexation of the _____ _____ Independent School District from the _____ Junior College District, and creation of the _____ Junior College District with boundaries coterminous with the boundaries of the _____ Independent School District.'  (the blanks to be filled in as appropriate).  All expenses incurred in holding the election shall be paid by the independent school district ordering such election.

"(d) The board of trustees shall make a canvass of the returns and declare the result of the election within 10 days after holding the election and shall enter an order on the minutes of the board as to the result of the election.  If a majority of the votes cast are in favor of disannexation and creation of a separate junior college district, such independent school district shall be deemed

disannexed and constituted as a separate
junior college district.

"(e) If the creation of the separate
junior college district is approved, it shall
be governed by the provisions of this code
relating to independent school district junior
colleges.  The offices of the representatives
of the disannexed independent school district
of the governing body of the countywide in-
dependent school district junior college dis-
trict shall be terminated, and the remaining
members of that governing body shall continue
to serve for the terms for which they were
elected.

"(f) Any petition for disannexation and
creation of a separate junior college district
may also incorporate a request for the proper
authorities, in the event an election is ordered
for the creation of a new district, to submit
at the same election, either as a part of the
disannexation issue or as a separate issue,
the questions of issuing bonds and levying
bond taxes and levying maintenance taxes, in
the event the district is created, not to ex-
ceed the limits provided in Section 51.102 of
this code."

Section 1 of Article VII of the Constitution of Texas
provides:

"A general diffusion of knowledge being
essential to the preservation of the liberties
and rights of the people, it shall be the duty
of the Legislature of the State to establish
and make suitable provision for the support
and maintenance of an efficient system of
public free schools."

In construing the above quoted provision, it was held
in Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31 (1931), that the
liberal rules of construction of this constitutional provision
should apply in determining the power of the Legislature in
organizing a public school system.  It was further held that
legislative determination of methods, restrictions and regula-
tions in organizing a State educational system is final except

when so arbitrary as to be violative of a constitutional right.

Junior college districts constitute a part of the system of public free schools. Shepherd v. San Jacinto Junior College District, 363 S.W.2d 742 (Tex.Sup. 1963). Therefore, unless regulated by some other constitutional provision, it is within the sole discretion of the Legislature to determine the method of annexation or deannexation of the territory comprising junior college districts. Section 3-b of Article VII of the Constitution of Texas provides in part:

> "No tax for the maintenance of public free schools voted in any independent school district and no tax for the maintenance of a junior college voted by a junior college district, nor any bonds voted in any such district, but unissued, shall be abrogated, cancelled or invalidated by change of any kind in the boundaries thereof. After any change in boundaries, the governing body of any such district, without the necessity of an additional election, shall have the power to assess, levy and collect ad valorem taxes on all taxable property within the boundaries of the district as changed, for the purposes of the maintenance of public free schools or the maintenance of a junior college, as the case may be, and the payment of principal of and interest on all bonded indebtedness outstanding against, or attributable, adjusted, or allocated to, such district or any territory therein, in the amount, at the rate, or not to exceed the rate, and in the manner authorized in the district prior to the change in its boundaries, and further in accordance with the laws under which all such bonds, respectively, were voted; . . ."

Section 3-b of Article VII recognizes that the Legislature may authorize changes in the boundaries of junior college districts so long as outstanding bonds are not abrogated, cancelled or invalidated. Since the bills in question only apply "provided that the county-wide independent school district junior college district has no outstanding bonded indebtedness which was incurred after the annexation of such independent school district", the bonded indebtedness of the junior college district could not be and is not abrogated, cancelled or invalidated by the provisions of the bills in question.

It may be argued that the electors comprising the entire junior college district should be permitted to vote on the deannexation of the independent school district since all the taxable property within the boundaries of the junior college district is subject to taxation for the present junior college district. Nevertheless, this is a question that is solely within the discretion of the Legislature and is not required by any constitutional provision. You are accordingly advised, in answer to your first and fifth questions, that it is constitutional for the Legislature to authorize the voters of an independent school district within a junior college district to vote to deannex the territory comprising the independent school district and creating a new junior college district.

Finally, in connection with our consideration of your first question concerning constitutionality, we have concluded that the form of the ballot and the proposition to be submitted to the voters, although duplicitous, is not confusing and is legally sufficient to inform the voter of the purpose of the election and the effect of an affirmative vote and is thus constitutional. The form of ballot will be upheld if not misleading to the voters. Beeman v. Mays, 163 S.W. 358 (Tex.Civ.App. 1914, error ref.).

In answer to your second and third questions, the bills in question apply to any independent school district which is the only school district that has been annexed to a countywide independent school district junior college district in an adjoining county. At the present time we are unaware of any school districts other than the Midland Independent School District annexed to the Odessa Junior College District to which these bills apply.

In answer to your fourth question, you are advised that the provisions of these bills will apply to deannexation procedure of territories of an independent school district which is the only school district that has been annexed to a countywide independent school district junior college district in an adjoining county, whether such territory has been annexed prior to or subsequent to the enactment of these bills.

### S U M M A R Y

S.B. 19 and H.B. 33 of the 62nd Leg. 4th C.S., relating to deannexing territories of certain independent school districts from

certain junior college districts are constitutional.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Gordon Cass
Gerald Ivey
James McCoy
Roger Tyler

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant